# In the United States Court of Federal Claims

No. 12-204C
(Filed: April 30, 2014)

```
* * * * * * * * * * * * * * * * * * * * * * * * *
                                          *
DMS IMAGING, INC.,                        *
                                          *
            Plaintiff,                    *   Contract Disputes Act, 41 U.S.C. § 7104;
                                          *   Summary Judgment; Lease of Magnetic
            v.                            *   Resonance Imaging Unit; Contract
                                          *   Interpretation; Integration of Lease; Risk
THE UNITED STATES,                        *   of Loss; Indemnification Clause;
                                          *   Severability Clause.
            Defendant.                    *
                                          *
* * * * * * * * * * * * * * * * * * * * * * * * *
```

Marc J. Fink, Cozen O'Connor, 1627 I Street, N.W., Suite 1100, Washington, D.C. 20006.  Philip T. Carroll and Marisa L. Saber, Cozen O'Connor, 333 W. Wacker Drive, Suite 1900, Chicago, IL 60606.

Stuart F. Delery, Bryant G. Snee, Martin F. Hockey Jr., and Michael D. Austin, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, D.C., 20530, for Defendant.

---

**MEMORANDUM OPINION AND ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON LIABILITY**

---

**WILLIAMS**, **Judge.**

DMS Imaging, Inc. ("DMS") claims the United States Department of Veterans Affairs ("VA") breached the terms of its contract with DMS for the lease of a magnetic resonance imaging ("MRI") mobile unit.  The MRI mobile unit was destroyed while in the VA's possession, and DMS claims it is owed the cost of the MRI mobile unit, its insurance deductible, and all unpaid rents under the terms of the parties' agreement.

This matter comes before the Court on the parties' cross-motions for summary judgment on liability.  For the reasons set forth below, the Court grants in part Plaintiff's cross-motion for summary judgment.

**Background**

**The Agreement to Lease an MRI Mobile Unit**

In or around May of 2008, the VA developed a need for an MRI mobile unit at its medical center in San Juan, Puerto Rico and asked DMS for a quote for a one-year lease. Def.'s App. 195-97. DMS provided the VA a quote of $65,000 for the first month and $52,000 for months two through twelve. See Def.'s App. 195, 200. In its quotation letter, DMS explained that its lease agreement was enclosed and would provide the VA "with the terms and conditions of our rentals and the exact equipment specification on the system . . . proposed." Def.'s App. 200. Thereafter, the VA issued a "Justification and Authorization for the Use of Other Than Full and Open Competition" to lease the unit from DMS, dated September 5, 2008. Pl.'s Ex. B. In the justification memorandum, the VA stated that DMS was the only responsible source that could fulfill its need for an MRI mobile unit in a timely manner. Id. The memorandum also stated that the VA had an "excellent experience in delivery and maintenance" leasing an MRI mobile unit from DMS in 2006.

On September 16, 2008, the parties entered into a contract for the lease -- contract number VA248-08-RP-0455. Def.'s App. 1. Both parties signed the first page of the contract, Standard Form 1449 ("SF 1449"). Id. Contracting Officer Awilda Perales signed the contract on behalf of the VA. Id. Under "Schedule of Supplies/Services," the contract states: "LEASE ON ONE (1) SIEMENS MOBILE MRI SYSTEM TO RADIOLOGY SERVICE AT VA CARIBBEAN HEALTHCARE SYSTEM, SAN JUAN, PUERTO RICO IN ACCORDANCE WITH APPROVED CONTRACTOR'S LEASE AGREEMENT 090408A AND ATTACHED CONTRACT TERMS AND CONDITIONS." Id. The SF 1449 provides that the details on pricing are explained on a separate "Schedule of Supplies/Services and Costs/Price" page. Def.'s App. 1, 3. Under the schedule, the VA agreed to lease the MRI mobile unit for a period of nine months and to pay a total of $481,000 -- $65,000 for the first month and $52,000 for each month thereafter. Id. at 3. The schedule also provides a description of the lease, stating: "Lease one (1) unit Siemens MRI System with approved lease agreement #090408A to Radiology Service at VA Caribbean Healthcare System, San Juan, Puerto Rico." Id. The "Description/Specification/Statement of Work" notes that the specifications of the MRI mobile unit were detailed "in approved lease agreement #090408A." Id. at 6.

Lease Agreement 090408A, Revision 4 is attached to the contract. Def.'s App. 8-23; Pl.'s Ex. F, at 7-22. The parties had revised the terms of the lease agreement three times, altering the equipment components of the MRI mobile unit and shortening the length of the lease to nine months. Def.'s App. 205-42. In addition to providing specifications on the components of the MRI mobile unit, the lease agreement sets out the conditions of the lease. Id. at 8-14. The lease agreement places the responsibility for keeping the MRI mobile unit in good repair on DMS and requires the VA to reimburse DMS for all maintenance necessitated by the VA's negligent acts. Id. at 12-13. The Risk of Loss clause in the lease agreement addresses damage and destruction of the unit, stating:

> Lessee shall bear the entire risk of loss, theft, destruction or damage of the leased
> property from any cause whatsoever and no loss, theft, destruction or damage of

the leased property shall relieve Lessee of the obligation to pay rent or any other obligations under this lease. In the event of loss, theft, or damage of any kind to the leased property, Lessee, at the option of Lessor, shall place the leased property in good condition and repair, or if the leased property is determined by Lessor to be lost, stolen, destroyed or damaged beyond repair and if requested by Lessor, purchase[] the property at its fair market value immediately preceding the event causing the loss.

Id. at 13-14.

The lease agreement includes a five percent late fee for unpaid rent with a service charge for delayed payment of one and one-half percent per month. Id. at 12. It requires the lessee, the VA, to maintain insurance coverage on the property and to indemnify DMS for claims related to the VA's use of the leased property. Id. at 10 ("The Lessee will, at its cost, maintain property insurance on the leased property. The property insurance will be for the full replacement value in an amount not less than $2,000,000.00 on an 'All Risk' or special perils coverage form . . . ."); id. at 13 ("Lessee shall indemnify and hold harmless Lessor . . . from any loss, claim, liability, and expense . . . in any way related to the leased property . . . ."). The lessee is also responsible for any "loss or damage to the property" not covered by insurance under the Loss or Damage clause. Id. at 13. Additionally, the lease agreement includes a severability clause, stating: "In the event that any portion of this agreement is held to be unenforceable or void, such provision shall be deemed to be severable and shall in no way affect the validity of the remaining terms and conditions of this agreement." Id. at 14.

The lease agreement's availability clause provides: "Lessee understands that this system is subject to availability and provided on a first-come, first-served basis. This rental agreement is not enforceable until system availability is confirmed and until this agreement is signed by both Lessor and Lessee." Id. at 10. The parties did not sign or initial any page of the lease agreement, but they signed the contract which attached and referenced the lease agreement. Id. at 1, 8-23.

**Contract Performance**

On or about October 16, 2008, the MRI mobile unit was delivered to and accepted by the VA. Def.'s App. 247. Juan E. Vega, the Radiologic Modalities Supervisor at the San Juan medical center, signed the certificate of acceptance on behalf of the VA, acknowledging acceptance of both the MRI mobile unit and the terms in the lease agreement. Id. The certificate of acceptance provides:

> The lessee hereby certifies that the above described Equipment [the MRI mobile unit] has been received, inspected, and approved, and hereby accepts the said Equipment upon the terms and conditions set forth herein and pursuant to the Asset Lease Agreement, by and between the Lessor and Lessee, as satisfactory, as of October, 16, 2008.

Id.

3

Within a month of acceptance, the VA began experiencing problems with the MRI unit, necessitating replacement parts. Def.'s App. 248-49. The VA paid the amount owed under the lease for the first month. Oral Arg. Tr. 16-17, Oct. 23, 2013; Def.'s App. 284. On December 3, 2008, the MRI mobile unit caught on fire, rendering it inoperable. Def.'s App. at 264, 288-91. The fire was found to be "likely accidental" by MDE Inc., a company hired by the VA to investigate the incident. Id. at 290. The VA did not make any further rent payments after the MRI mobile unit's incapacitation. Oral Arg. Tr. 17, Oct. 23, 2013.

On December 12, 2008, in response to the fire, counsel for DMS submitted a letter to Contracting Officer Perales, notifying her that under the terms of the lease agreement, the VA had to maintain insurance coverage and would be responsible for the loss of the MRI mobile unit. Def.'s App. 251-52. Contracting Officer Perales responded to the letter on March 19, 2009, stating that the VA could not bear responsibility for the entirety of the risk of loss. She maintained that the requirement for the VA to obtain insurance to cover the leased MRI mobile unit conflicted with other terms in the contract requiring the contractor to have insurance under Federal Acquisition Regulation ("FAR") 52.228-5 and VA Acquisition Regulation ("VAAR") 852.237-70. Id. at 253.[1] Because of this perceived conflict between the lease agreement and the other contract terms, the Contracting Officer maintained that the FAR and VAAR terms took precedence over the lease agreement. Id. at 253.

On June 28, 2011, DMS submitted a certified claim to the VA seeking $954,176 in damages for the loss of the MRI mobile unit, lease payments, and fees due under the lease agreement, and its insurance deductible. Id. at 260-63. DMS claimed that under the Risk of Loss provision in the lease agreement, the VA bore the entire risk of loss from damage to the MRI mobile unit and owed DMS all uncollected rent payments. Id. at 260-61. DMS sought its insurance deductible, arguing that the VA's failure to maintain the contractually mandated property insurance led DMS to seek insurance proceeds from its own insurer to cover the loss. Id. at 261. DMS also claimed late fees and interest on the unpaid rent under paragraph 2 of the lease agreement's terms and conditions. Id. at 261.

On January 9, 2012, Contracting Officer Perales denied DMS's claim, finding that (1) the contract was constructively terminated when the fire destroyed the MRI mobile unit, (2) DMS was improperly bringing a claim on behalf of its insurer, (3) DMS was at fault for any damage, (4) the lease agreement was not enforceable because it was not signed by both parties as required by the availability clause, (5) the "contract" superseded the lease agreement, (6) the Government was not permitted to enter into an agreement where its indemnification liability was unlimited, and (7) DMS was improperly seeking a double recovery by seeking recovery against the Government for the damages to the MRI mobile unit and against an unnamed party in a civil

---

[1] VAAR 852.237-70 required the contractor to maintain property damage insurance, and FAR 52.228-5 required the contractor to maintain the kinds and minimum amounts of insurance that were required elsewhere in the contract. Id. at 47-49. The contract required Plaintiff to obtain supplemental insurance in accordance with FAR 28.307-2, including worker's compensation and employer's liability insurance, bodily injury liability insurance, and automobile liability insurance. Id. at 48-49.

lawsuit. Id. at 264-66. Plaintiff filed the instant complaint on March 29, 2012, appealing the Contracting Officer's denial of Plaintiff's claim.

## Discussion

**Jurisdiction and Summary Judgment Standard**

This Court has jurisdiction over Plaintiff's claim pursuant to the Contract Disputes Act ("CDA"), 41 U.S.C. § 7104(b), and the Tucker Act, 28 U.S.C. § 1491(a)(2). Under the CDA, a contractor may appeal a contracting officer's final decision on a claim directly to this court. § 7104(b)(1). The Tucker Act provides: "The Court of Federal Claims shall have jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 7104(b)(1) of title 41 . . . ." § 1491(a)(2).

Under Rule 56 of the Rules of the United States Court of Federal Claims ("RCFC"), the Court shall grant summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a). The moving party bears the burden of establishing the absence of a genuine dispute over a material fact, and any doubt over factual issues shall be resolved in favor of the non-movant. Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1390 (Fed. Cir. 1987) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); SRI Int'l v. Matsushita Elec. Corp., 775 F.2d 1107, 1116 (Fed. Cir. 1985)). When cross-motions for summary judgment are before the Court, "the [C]ourt must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." Id. at 1391. A fact is only material if it may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). No genuine dispute over a material fact exists "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party . . . ." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).

**Liability for Loss of the Leased MRI Mobile Unit**

At issue in this action is whether DMS or the VA bore the risk of loss of the leased MRI mobile unit under the parties' contract. The parties agree that no material facts are in dispute and that it is appropriate for the Court to determine the meaning of the contract at issue. The Risk of Loss provision in the lease appended to the parties' contract clearly places the entire risk of loss for the destruction of the leased property on the Lessee, in this case, the Government.

Defendant contends that because the parties did not sign the lease agreement and the availability clause of the lease agreement makes its enforceability contingent upon the parties' signing it, the lease agreement is not enforceable. Stated differently, Defendant argues that signing the appended lease was a condition precedent to its enforceability. Def.'s Mot. for Summ. J. 19. The Court disagrees. Here, the Court must interpret the contract as a whole, rather than view the lease agreement's availability clause in a vacuum. "All writings that are part of the same transaction are interpreted together." Restatement (Second) of Contracts § 202(2) (1981); see also 11 Williston on Contracts § 30:25 (4th ed. 2013); Summit Elec. Supply Co. v. Int'l Bus.

5

Machs. Corp., No. 1:07-CV-0431, 2009 WL 9087259, at *14 (D.N.M. Sept. 30, 2009) ("The parties can choose to incorporate any separate, unsigned document into their signed [Statement of Work], even if the separate document would otherwise require a signature if it had not been so incorporated."). The parties signed the first page of the contract documents, SF 1449, forming a contract to lease an MRI mobile unit. Def.'s App. at 1. The lease agreement is attached to the contract and is listed as the "Asset Lease Agreement" in the contract's table of contents. Def.'s App. 2, 8-23. The schedule of supplies/services in the SF 1449 states: "LEASE ON ONE (1) SIEMENS MOBILE MRI SYSTEM TO RADIOLOGY SERVICE AT VA CARIBBEAN HEALTHCARE SYSTEM, SAN JUAN, PUERTO RICO <u>IN ACCORDANCE WITH APPROVED CONTRACTOR'S LEASE AGREEMENT 090408A AND ATTACHED CONTRACT TERMS AND CONDITIONS.</u>" Id. (emphasis added). By expressly providing that the contract for leasing the MRI system was "IN ACCORDANCE WITH APPROVED CONTRACTOR'S LEASE AGREEMENT" and the "ATTACHED CONTRACT TERMS AND CONDITIONS," the contract made the attached lease along with its "terms and conditions" part of the contract.

Because all of the documents in the contract must be interpreted together as one document, the signatures on the first page of the contract constitute acceptance to the whole agreement, including the attached lease agreement. Further, the attached lease agreement details the specific equipment components included in the MRI mobile unit -- particulars not found elsewhere in the contract. Id. at 8, 15-23. As such, the contract plainly includes the attached lease agreement.

Defendant also claims that it did not intend the lease agreement to be enforceable, arguing that there was no "meeting of the minds" as to its enforceability because the parties never discussed whether the lease agreement would apply if it was not signed. Id. at 19-24. As noted above, the signing of the contract including the lease agreement demonstrates a meeting of the minds. In addition, the parties' meeting of minds is evidenced by their course of performance. Plaintiff delivered the unit. The VA accepted the unit, signed a certificate of acceptance, and paid the first month's rent. The VA was using the unit, thus giving effect to the lease up until the time the unit caught on fire and was destroyed.[2] Because the parties honored the lease agreement by their performance, Defendant cannot avoid the operation of the lease's Risk of Loss provision by invoking the availability clause. Defendant did not quibble about the parties' failure to sign the lease agreement when it accepted delivery of the MRI unit, paid the agreed upon rental fee for it, and used the unit.

Moreover, if the Court agreed with Defendant, a portion of the contract would be rendered meaningless, and seemingly important requirements would have no effect. The specifications as to the component parts for which the VA bargained were only contained in the lease agreement, not the SF 1449. The statement in the schedule of supplies/services that the lease of the MRI mobile unit was "IN ACCORDANCE WITH APPROVED CONTRACTOR'S

---

[2] Defendant argues that by not acquiring insurance for the MRI mobile unit, the VA demonstrated a lack of intent to abide by the lease agreement. The fact that the VA did not honor this requirement does not vitiate its assent to other contract terms or change the fact that it performed the lease agreement in other material respects.

6

LEASE AGREEMENT 090408A AND ATTACHED CONTRACT TERMS AND CONDITIONS" would make no sense if the parties did not intend for this "approved" lease agreement and the attached terms and conditions therein to apply. Accordingly, the only reasonable interpretation of the contract is that the attached lease agreement is integrated into the contract and is enforceable. See Arizona v. United States, 216 Ct. Cl. 221, 235-36 (1978) ("[A]n interpretation which gives a reasonable meaning to all parts [of the contract is] preferred to one which leaves a portion of it useless, inexplicable, inoperative, void, insignificant, meaningless, superfluous, or achieves a weird and whimsical result.").

Defendant further contends that, even if the lease agreement is deemed to be part of the contract, the contracting officer lacked authority to agree to the lease agreement and its Risk of Loss clause because the lease contains an Indemnification clause that made the Government's potential liability to DMS unlimited and "there was no appropriation to cover the unlimited liability." Def.'s Suppl. Br. 12. The lease agreement's Indemnification clause requires the VA as lessee to "indemnify and hold harmless Lessor . . . from any loss, claim, liability, and expense . . . including without limitation claims for personal injury, death or property damage or loss where the injury, death, damage or loss arises out of or is in any way related to the leased property . . . ." Def.'s App. 13. Relying solely on this Indemnification clause (not the Risk of Loss clause), Defendant argues that "if this Court were to find that the contracting officer did intend to or actually did bind the United States to the terms and conditions of the DMS drafted lease, such a finding would amount to an Anti-Deficiency Act violation." Id.

Even if the Indemnification clause were unenforceable under the Anti-Deficiency Act, this would not prevent Plaintiff from demonstrating that Defendant is liable under another provision of the parties' agreement. See Union Pac. R.R. Corp. v. United States, 52 Fed. Cl. 730, 733 (2002) (stating that recovery against the Government would be permissible to the extent plaintiff could establish that it is owed money under a provision independent of the offending indemnification clause). The lease agreement includes a severability clause providing: "In the event that any portion of this agreement is held to be unenforceable or void, such provision shall be deemed to be severable and shall in no way affect the validity of the remaining terms and conditions of this agreement." Def.'s App. 14. The allegedly flawed Indemnification clause, even if violative of the Anti-Deficiency Act, would not alter the remaining terms of the contract or render the remaining clauses unenforceable. See Scovill v. WSYX/ABC, 425 F.3d 1012, 1016-17 (6th Cir. 2005) (finding, under Ohio law, that arbitration clause was enforceable after removing unenforceable provisions from the clause because the contract contained a severability clause and removing the offending provisions did not "taint" the remainder of the contract); Booker v. Robert Half Int'l, Inc., 413 F.3d 77, 83-86 (D.C. Cir. 2005) (removing punitive damages provision from enforceable arbitration clause under the contract's severability clause).

Plaintiff does not seek recovery under this Indemnification clause -- it seeks damages under the Risk of Loss clause.[3] Defendant does not suggest that the Risk of Loss clause itself violates the Anti-Deficiency Act. Oral Arg. Tr. 54, Feb. 20, 2014. Unlike the Indemnification clause, the Risk of Loss clause does not subject the Government to unlimited liability. The Risk

---

[3] Plaintiff claims additional losses resulting from the VA's failure to pay out or maintain insurance to cover its alleged damages, mainly its insurance deductible.

7

of Loss clause provides: "Lessee shall bear the entire risk of loss, theft, destruction or damage of the leased property from any cause whatsoever and no loss, theft, destruction or damage of the leased property shall relieve Lessee of the obligation to pay rent or any other obligation under this lease." Def.'s App. at 13. Damages under this clause are limited to the value of the MRI mobile unit and unpaid rent payments. The Government has been held liable under risk of loss clauses. S. W. Aircraft Inc. v. United States, 213 Ct. Cl. 206, 211-13 (1977) (finding the Government liable for destruction of leased helicopter under risk of loss clause because Government assumed risk of loss for all damage to helicopter that occurred under an elevation level of 500 feet); Container Co. v. United States, 116 Ct. Cl. 706, 718-21 (1950) (holding the Government liable for the risk of loss to leased property under provision requiring the Government to repair all damage caused by overloading the building).[4]

### Conclusion

For the foregoing reasons, the Court finds Defendant liable under the Risk of Loss clause of the parties' contract and grants Plaintiff's cross-motion for summary judgment as to liability in part. This Court does not reach the issue of whether Defendant is liable for Plaintiff's insurance deductible as the record on that issue is insufficiently developed. The Court denies Defendant's cross-motion for summary judgment.

Because liability and damages have been bifurcated, the Court does not address Plaintiff's entitlement to damages or the amount of any damages claimed here.[5] Plaintiff has the burden to prove that it suffered monetary losses in the damages phase. See Citizens Fed. Bank v. United States, 474 F.3d 1314, 1318-19 (Fed. Cir. 2007); Kenney Orthopedic, LLC v. United States, 88 Fed. Cl. 688, 704 (2009).

The Court will conduct a telephonic conference on **May 15, 2014 at 2:00 p.m. EST**, to discuss scheduling.

s/Mary Ellen Coster Williams  
**MARY ELLEN COSTER WILLIAMS**  
**Judge**

---

[4] Defendant's argument that Plaintiff's claim sounds in tort is not accurate. Plaintiff exclusively invokes the terms of the contract and lease agreement in seeking recovery here.

[5] Defendant's argument that DMS has not suffered any losses because it obtained a settlement of $225,000 from the manufacturer of the MRI mobile unit and DMS's losses were otherwise covered by its insurance policy, will be considered in the damages phase. See Def.'s Suppl. Br. 7-8.